IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MIDWEST FEEDERS, INC., | : | |
| a Kansas Corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO.: 1:15-CV-00013 (LJA) |
| v. | : | |
| | : | |
| REGIONS BANK (INC.) (ALABAMA), | : | |
| an Alabama Corporation, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant Regions Bank (Inc.) (Alabama)'s, ("Defendant"), Motion to Dismiss Plaintiff Midwest Feeders, Inc.'s Complaint. (Docs. 1, 9). For the reasons set forth below, Defendant's Motion, (Doc. 9), is **GRANTED**.

### I. PROCEDURAL BACKGROUND

On January 21, 2015, Plaintiff initiated this diversity action by filing a Complaint against Defendant alleging five claims: (1) Conversion of Instruments under Georgia's version of the Uniform Commercial Code, O.C.G.A. § 11-3-420, ("Georgia UCC § 11-3-420" or "§ 11-3-420"); (2) Failure to Exercise Ordinary Care under Georgia UCC § 11-3-404(d); (3) Common Law Conversion of Funds; (4) Common Law Negligence; and (5) Common Law Negligent Hiring and Supervision. (Doc. 1). On March 11, 2015, Defendant filed a Motion to Dismiss all of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 9). On March 20, 2015, Plaintiff filed its Response. (Doc. 10). On April 6, 2015, Defendant filed its Reply. (Doc. 11). Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint, (Doc. 9), is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## II. FACTUAL BACKGROUND[1]

Plaintiff alleges that in 2010, Moseley Cattle, a non-party limited liability corporation, entered into a loan agreement with Plaintiff in which Plaintiff provided Moseley Cattle with financing for the purchase of livestock in exchange for a security interest in that livestock. (Doc. 1 ¶¶ 5, 9, 10). Pursuant to the agreement, Plaintiff deposited money into an account with the Alva State Bank ("Alva State Bank Account") and Moseley Cattle was permitted to withdraw money from the Alva State Bank Account to purchase livestock. (*Id.* ¶¶ 9, 10). After purchasing the livestock, Moseley Cattle would contract to resell the livestock through auctions, forward purchase contracts, or on the spot market to livestock purchasers. (*Id.* ¶ 11). Moseley Cattle was then obligated to issue invoices to the livestock purchasers and make arrangements for them to send their payments to the Alva State Bank Account by delivery to a specified post office box in Alva, Oklahoma (the "Alva State Bank Lockbox"). (*Id.*) Monies paid by the livestock purchasers and sent to the Alva State Bank Lockbox were required to be used to repay Plaintiff's loan to Moseley Cattle. (*Id.*)

John F. Moseley, III ("Trip Moseley") is the managing principal of Moseley Cattle. (*Id.* ¶ 6). Trip Moseley's father, John Moseley, Jr., was employed by and worked at Moseley Cattle. (*Id.*) Prior to March 12, 2014, John Moseley, Jr. was married to Cheryl Lynn Moseley ("Cheryl Moseley"). (*Id.*) Trip Moseley had an account with Defendant named "Mosley Cattle Auction LLC," ("Regions Bank Depository Account"), that was used in connection with Moseley Cattle's livestock business. (*Id.* ¶ 7).

On March 12, 2014, Cheryl Moseley confessed to the following activity that Plaintiff alleges to be fraudulent:

- Cheryl Moseley wrote checks drawn on the Alva State Bank Account payable to purported cattle sellers. (*Id.* ¶12(a)). Some of the purported cattle sellers did not exist or did not conduct business with Moseley Cattle. (*Id.* ¶12(a)). In some instances, the purported cattle seller did exist and did conduct business with Moseley Cattle, but did not enter into the transaction which was the subject of the checks. (*Id.* ¶12(a)).

- Cheryl Moseley, who is not an authorized signatory on the Alva State Bank Account, signed the checks for the fraudulent transactions using the signature of her husband,

---

[1] On a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court accepts all facts alleged in Plaintiff's Complaint, (Doc. 1), as true. *See* Fed. Rs. Civ. P. 12(b)(1), (b)(6); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

- John Moseley, Jr., or one of her three sons Trip Moseley, Will Moseley, or Joey Moseley. (*Id.* ¶12(b)).
- Cheryl Moseley endorsed the checks by signing the name of a fictitious third-party payee and then endorse the check in the name of her husband or sons, followed by language "For Deposit Moseley Cattle[.]" (*Id.* ¶ 12(c)).
- Defendant accepted the checks for deposit by crediting Moseley Cattle's Regions Bank Depository Account. (*Id.* ¶ 12(d)).
- Defendant presented the checks to Alva State Bank for payment on the Alva State Bank Account that Plaintiff funded. (*Id.* ¶ 12(e)).
- Alva State Bank paid Defendant for the checks. (*Id.* ¶ 12(f)).
- Plaintiff deposited money into the Alva State Bank Account to cover all checks written on the Alva State Bank Account by Moseley Cattle. (*Id.* ¶ 12(g)).
- Defendant credited the funds from the checks to the Regions Bank Depository Account. (*Id.* ¶ 12(h)).
- Cheryl Moseley and Moseley Cattle withdrew funds from the "Regions Bank Depository Account" for reasons other than purchasing cattle. (*Id.* ¶ 12(i)).

In March 2014, Plaintiff began noticing irregularities in the invoices and checks purportedly generated by Moseley Cattle. (*Id.* ¶ 13). During the week of March 10, 2014, Mr. Jeffrey Sternberger, Plaintiff's employee, made various phone calls to Trip Moseley in order to discuss these irregularities. (*See id.*) On March 12, 2014, Mr. Sternberger received a call from Cheryl Moseley in which she confessed to obtaining credit from Plaintiff through false pretenses. (*Id.* ¶ 14). Specifically, Cheryl Moseley confessed to drafting the checks and submitting invoices to cover the scheme. (*Id.*) On March 12, 2014, Cheryl Moseley confessed her role in the check scheme to her husband. (*Id.* ¶ 15). Later that day, Cheryl Moseley took her own life and passed away at her family's home in Blakely, Georgia. (*Id.*) In meetings and telephone conversations subsequent to March 12, 2014, Trip Moseley and his brothers reviewed with Plaintiff the subject checks and confirmed that none was related to legitimate cattle purchases. (*Id.* ¶ 16).

The bank statements provided to Plaintiff from Alva State Bank did not include copies of the reverse side of checks that were drawn on the Alva State Bank Account by Moseley Cattle. (*Id.* ¶ 17). After March 12, 2014, in light of Cheryl

Moseley's confession, Plaintiff requested copies of the front and back of the checks from Alva State Bank. (*Id.*)  When Alva State Bank provided copies of both sides of the checks in March, 2014, Plaintiff confirmed Cheryl Moseley's scheme for the first time.  (*Id.* ¶ 18).  Cheryl Moseley issued at least 153 fraudulent checks and deposited them for credit to the Regions Bank Depository Account totaling more than $23 million between January, 2012 and March, 2014.  (*Id.* ¶¶ 20-22).

Prior to March, 2014, Defendant made no inquiry to Moseley Cattle as to why more than $23 million of checks, handwritten by Moseley and payable to third-party payees, were purportedly endorsed by the third-party payees but were being deposited by Cheryl Moseley into the Regions Bank Depository Account.  (*See id.* ¶ 24).  The subject checks deposited by Cheryl Moseley represented a significant percentage of all deposits for all customers accepted by Defendant at its Fort Gaines branch on a month to month basis since at least January, 2013. (*Id.* ¶ 25).

### III.  LEGAL STANDARD

Defendant moves to dismiss all of Plaintiff's claims for lack of standing and lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6).

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam).  A Rule 12(b)(1) standing challenge "come[s] in two forms[:]" facial or factual.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [its] complaint are taken as true for the purposes of the motion."  *Stalley*, 524 F.3d at 1232-33 (internal quotations marks omitted) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1250 (11th Cir. 2007)).  "By contrast, a factual attack . . . challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Stalley*, 524 F.3d at 1233 (citing *McElmurray*, 501 F.3d at 1251).  Here, Defendant has not introduced any material extrinsic from the pleadings, therefore the Court construes Defendant's motion as a facial challenge to

standing under Rule 12(b)(1). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981)).

To survive a dismissal under Rule 12(b)(6), "a complaint must contain specific factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. While "all well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff," *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999), the same liberal reading does not apply to legal conclusions. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79. Additionally, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* at 678.

## IV. <u>ANALYSIS</u>

### A. UCC Claims

Plaintiff raises two claims under the UCC, a conversion claim pursuant to UCC § 11-3-420 and a failure to exercise ordinary care claim under § 11-3-404(d). Both claims fail because Plaintiff is not among the three classes of persons who may bring an action to enforce a financial instrument, like a check. Under the UCC, "'[p]ersons entitled to enforce' an instrument means: (i) the holder of the instrument;[2] (ii) a nonholder in possession of the instrument who has the rights of a holder;[3] or (iii) a person not in possession of the instrument

---

[2] A holder of a check is a person in possession of a check made payable to bearer or to the person in possession. Georgia UCC § 11-1-201(20)(a).
[3] A non-holder in possession can obtain the rights of a holder by transfer from a holder. *See Hampton Island, LLC v. Asset Holding Co. 5, LLC*, 320 Ga. App. 880, 882, 740 S.E.2d 859 (2013) (transfer of a negotiable instrument "vests in transferee any right of the transferor to enforce the instrument, including any rights as a holder in due course").

who is entitled to enforce the instrument pursuant to [Georgia UCC § 11-3-309 or § 11-3-418(d)]."[4]  O.C.G.A § 11-3-301.  In its first claim, Plaintiff alleges that Defendant is liable for conversion under Georgia UCC § 11-3-420 "by allowing negotiable instruments . . . to be deposited by Cheryl Moseley and credited to the [Regions Bank Depository Account] over forged signatures when Cheryl Moseley had no right to enforce the negotiable instruments or receive payment."  (Doc. 1 ¶ 37).  Georgia UCC § 11-3-420 provides:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

O.C.G.A. § 11-3-420.

In its second claim, Plaintiff alleges that "[Defendant's] conduct, actions, and inactions . . . constitute failure to exercise ordinary care" under Georgia UCC § 11-3-404(d).  (Doc. 1 ¶¶ 41-46).  Georgia UCC § 11-3-440(d) provides:

> [I]f a person . . . taking [the instrument] for value or for collection fails to exercise ordinary care in . . . taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

O.C.G.A. § 11-3-404(d).

Plaintiff does not allege that it is among any of the three categories of entities that the Georgia UCC expressly lists as "[p]ersons entitled to enforce" an allegedly fraudulently endorsed check.  Instead, Plaintiff alleges that its standing arises under the exclusionary provision of § 11-3-420(a)(i)-(ii) which provides, "[a]n action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument; or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee."  Specifically, Plaintiff argues, "when § 11-3-420(a)(i)-(ii) expressly excepts two of many persons interested in the [subject checks], [Plaintiff] must be regarded as having been deliberately excluded from the exceptions which Defendant asks this Court to adopt."  (Doc. 10 at 7) (internal citation omitted).

---

[4] Under Georgia UCC § 11-3-309, a *person who was in possession* of a check and entitled to enforce the check when he or she lost possession, may be entitled to enforce a lost, destroyed, or stolen check. Georgia UCC § 11-3-418(d) also provides that when a person is not in possession of a check because it was paid or accepted by mistake, that person may have rights as a

6

Plaintiff's argument is not supported by law. In *Dees v. Logan*, the Supreme Court of Georgia stated, "when a statute expressly mentions one of many things, the omitted things must be regarded as having been deliberately excluded." 282 Ga. 815, 816, 653 S.E.2d 735 (2007) (citing *Alexander Properties Group v. Doe*, 280 Ga. 306, 309, 626 S.E.2d 497 (2006); *C. Brown Trucking v. Rushing*, 265 Ga. App. 676, 677, 595 S.E.2d 346 (2004). Thus, because the Georgia UCC expressly enumerates only three types of "persons entitled to enforce" a financial instrument, and because Plaintiff does not allege facts showing that she qualifies as any of the enumerated "persons," the Court must regard Plaintiff "as having been deliberately excluded" from those "persons" entitled to bring a cause of action for conversion of a financial instrument under the Georgia UCC. *See Jenkins v. Wachovia Bank Nat'l Ass'n*, 309 Ga. App. 562, 566, 711 S.E.2d 80 (2011) (holding that plaintiff with no right to enforce an allegedly converted check lacked standing to bring a conversion claim under the Georgia UCC).

Moreover, Plaintiff "appears to be confusing an interest in the funds backing the checks with an interest in the checks themselves. . . . The terms of [the] debt, however, are tied to [the] ancillary contract, not the negotiable instruments in question.").[5] *National Acc. Ins. Underwriters, Inc. v. Citibank, F.S.B.*, 543 F.3d 907, 910 (11th Cir. 2008). Furthermore, Plaintiff cites to no legal authority granting a person standing to bring suit against a bank under Georgia UCC § 11-3-404(d) based on facts similar to those in this action. *See Promissor, Inc. v. Branch Bank and Trust Co.*, No. 1:08-CV-1704-BBM, 2008 WL 5549451, at *6 (N.D. Ga. Oct. 31, 2008) (finding that substantially similar § 11-3-405 "do[es] not give rise to any cause of action which would allow Promissor to collect damages. . ."). Accordingly, Plaintiff does not have standing to sue under the UCC.

---

person entitled to enforce the check. Neither section is relevant under the circumstances alleged in the Complaint.
[5] The terms of Illinois's version of the UCC at issue in the *Citibank* case mirror the terms of the Georgia UCC at issue here:

(a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

810 I.L.C.S. 5/3–420(a).

### B. Third Claim – Common Law Conversion of Funds

Plaintiff alleges that Defendant is liable for common law conversion based on its "acceptance for deposit and cashing of the checks in question and the refusal to repay the monies in question. . . ." (Doc. 1 ¶ 52); *see also* (Doc. 10 at 10-12). In support of its claim, Plaintiff cites to numerous cases, none of which permits common law conversion claims by a non-customer against a bank to proceed in light of the statutory scheme established by § 11-3-420. On the contrary, under Georgia law § 11-3-420 preempts Plaintiff's common law conversion claim. Where a "[p]laintiff attempts to assert a common law claim for conversion, § 11-3-420 preempts [the common law conversion] claim because § 11-3-420 clearly addresses conversion." *Ownbey Enterprises, Inc. v. Wachovia Bank, N.A.*, 457 F. Supp.2d 1341, 1353-54 (N.D. Ga. 2006) (citing *Jacobs v. Metro Chrysler-Plymouth, Inc.*, 125 Ga. App. 462, 467, 188 S.E.2d 250, 253 (1972); *Promissor,* 2008 WL 5549451, at * 6 (same). Accordingly, because the Court has found that Plaintiff does not have standing to bring suit for conversion under Georgia UCC § 11-3-420 and that § 11-3-420 preempts a suit for common law conversion, Plaintiff's common law conversion claim fails.

### C. Fourth and Fifth Claims – Common Law Negligence, and Negligent Hiring and Supervision

Finally, Plaintiff alleges common law negligence and common law negligent hiring and supervision claims. (Doc. 1 ¶¶ 41-67). To state a cause of action for common law negligence in Georgia, the following elements are essential: (1) A legal duty to conform to a standard of conduct for the protection of others against reasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. *Gullock v. Spectrum Sciences and Software, Inc.*, 146 F. Supp.2d 1364, 1376 (M.D. Ga. 2001) (citation omitted). Plaintiff alleges that Defendant breached its "obligation under . . . its own corporate policies, commercially reasonable banking standards, and regulations to prevent misuse of accounts under [its] control. . . ." (Doc. 1 ¶¶ 57, 54-56, 58-60). Plaintiff further alleges that "[Defendant] is liable for its negligence in failing to properly instruct its employees, or failing to assure that the corporate policies of the Bank were followed, and [Defendant] knew of should have known that its employees were not following Bank policies in accepting deposit of the [subject checks]." (Doc. 1 ¶¶65, 61-64, 66-

67).  However, a "negligence action requires a duty or obligation recognized by law and] [Plaintiff] has identified no duty" that Defendant owed to Plaintiff, a non-customer. *Promissor*, 2008 WL 5549451, at *4.

Furthermore, while there is no case law in Georgia or the Eleventh Circuit that directly addresses whether a bank owes a duty to a non-customer, other Circuits have found that a bank owes no duty to a non-customer who alleges a common law tort claim. *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) (a bank owes no duty to a "noncustomer who is defrauded by the bank's customer through use of its services" and finding no duty where noncustomer had "no direct relationship" with the defendant bank) (collecting cases)); *National Union Fire Ins. Co. of Pittsburg, PA v. Raczkowski*, 764 F.3d 800, 805-06 (8th Cir. 2014) (bank owed no duty to noncustomer whose employee opened account in its name and fraudulently deposited noncustomer's checks into account); *VIP Mortg. Corp. v. Bank of America, N.A.*, 769 F. Supp. 2d 20, 27 (D. Mass. 2011) (reiterating "the now almost universal rule that banks do not owe a common law duty of care to third party noncustomers"); *National Grange Mut. Ins. Co. v. Verizon's Benefits Center*, 541 F. Supp. 2d 745, 750-51 (D. Md. 2008) (bank owed no duty to non-customer for allowing bank customer to deposit the plaintiff's guardianship funds into customer's personal accounts).  Accordingly, Plaintiff has failed to state a claim for common law negligence and negligent hiring and supervision.

## V.  CONCLUSION

Having considered the pleadings, the arguments of the Parties, and the applicable law, the Court **HEREBY GRANTS** Defendant's Motion to Dismiss Plaintiff's Complaint without prejudice.  (Doc. 9).

**SO ORDERED**, this   30th   day of September, 2016.

  /s/ Leslie J. Abrams  
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**